**Burton HOFFMAN, Plaintiff,**

v.

**HILL and KNOWLTON, INC., Defendant.**

**Civ. A. No. 91–583 SSH.**

United States District Court, District of Columbia.

Nov. 20, 1991.

Newton Pacht, Chevy Chase, Md., for plaintiff.

Steven B. Chameides, Robert J. Morris, Foley & Lardner, Washington, D.C., for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Now before the Court is defendant's motion to dismiss. On consideration of the

entire record, the Court grants the motion in part and denies it in part.

### Background

This is an action alleging discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 621 *et seq.* (1977). Plaintiff asserts pendent state law claims of defamation, intentional infliction of emotional distress, and breach of a covenant of good faith and fair dealing. Defendant has moved to dismiss plaintiff's state law claims for failure to state a claim upon which relief can be granted.

For the purposes of defendant's motion, the Court accepts as true the following facts that plaintiff alleges in his complaint. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Gregg v. Barrett,* 771 F.2d 539, 547 (D.C.Cir.1985). Defendant Hill and Knowlton (HK) hired plaintiff Burton Hoffman on March 1, 1985, to work in its Washington, D.C., office.[1] In 1986, HK asked Hoffman to accept an assignment overseas on behalf of the Republic of Indonesia. When Hoffman completed the assignment, HK asked him to remain in Indonesia to work on its account with the Indonesian government as HK's senior representative. Hoffman and HK executed a written agreement governing Hoffman's employment in Indonesia for one year ending on December 31, 1987. (Plaintiff's ex. 1.)

Hoffman and HK renewed the agreement three times. The original agreement and each renewal contained provisions setting forth the length of the contract "with extension subject to mutual agreement." (Plaintiff's exs. 1 and 2.)[2] The agreement and the renewals further provided:

> In the absence of an extension or other agreement, upon completion of the assignment Mr. Hoffman will revert to his prior status as an employee of ... Hill and Knowlton/Washington for a period of not less than 180 days from the time of the end of the assignment to Jakarta.

Hoffman notified HK in October 1989 that he planned to return to the Washington, D.C., office in January 1990. When Hoffman returned to the United States, HK's personnel department and its Chief Administrative Officer, Harry B. Oakley, Jr., informed him that HK no longer needed his services and urged him to resign. Hoffman refused to resign, and insisted that HK honor the provision in his contract guaranteeing him employment in the Washington office for 180 days.

HK provided Hoffman "a desk vacated by an intern in a semi-partitioned area in which were located secretaries, other support personnel and office equipment." (Complaint ¶ 21.) The office manager in Washington informed Hoffman that he opposed Hoffman's return to Washington, and that he had no work to assign Hoffman. HK did not provide Hoffman with a secretary, a computer, or support services, which it did provide to younger, newly-hired employees. (Complaint ¶ 23.) In addition, HK promoted younger employees to positions for which Hoffman was qualified.

Hoffman protested that HK's treatment of him constituted age discrimination. In response, "Mr. Oakley made certain accusations against Mr. Hoffman ... and demanded that he resign." (Complaint ¶ 37.) "The reason given by [HK] for demanding [Hoffman's] resignation, that [Hoffman] injured Hill and Knowlton's interests, was false, pretextual, and was motivated by discriminatory animus and/or reckless disregard for the truth." HK knew that its false reason for demanding Hoffman's resignation "would be communicated internally and ... would also be communicated to prospective employers to the detriment of [Hoffman]." (Complaint ¶ 38.) At the end of the 180–day period, HK terminated Hoffman.

---

1. Plaintiff was born on June 28, 1929, and was 55 years old at the time HK hired him.

2. Plaintiff included only one of the renewals as an exhibit to his complaint. Defendant notes that the relevant language for purposes of this motion was identical in the original contract and the three renewals.

## Discussion

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, the complaint must contain sufficient factual allegations to establish a right to relief. *See Gregg*, 771 F.2d at 547.

### A. Defamation

■ "In libel and slander suits the time and place of the publication should be specifically stated in the complaint." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1309 (1990). "[T]he use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings." *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979).

Plaintiff alleges that defendant falsely accused him of injuring the company's interests and that defendant must have communicated its false reason for demanding his resignation to its employees and to potential employers. Plaintiff does not state the time and place of the alleged communication to employees and others. Moreover, plaintiff does not set forth the content of the alleged statement, the speaker, or the listener. Thus, plaintiff's defamation claim is based on inference and conjecture without supporting factual allegations. Given the heightened pleading standard in defamation actions, plaintiff's allegations are insufficient to state a claim. *See Ridgewell's Caterers v. Nelson*, 688 F.Supp. 760, 763 (D.C.1988).

### B. Intentional Infliction of Emotional Distress

■ Under District of Columbia law, "intentional infliction of emotional distress consists of (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C.1984) (citations and quotation marks omitted). To state a claim, plaintiff must allege conduct on the part of defendant that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.; accord Cunningham v. United Nat'l Bank of Washington*, 710 F.Supp. 861, 863–64 (D.D.C.1989).

In *Howard University v. Best*, 484 A.2d at 986, the District of Columbia Court of Appeals stated that "actions which violate public policy may constitute outrageous conduct sufficient to state a cause of action for infliction of emotional distress." The plaintiff in *Best* produced evidence to show that her supervisor sexually harassed her by repeatedly touching her, propositioning her, and making vulgar comments to others about her. The *Best* court noted that sexual harassment violates District of Columbia public policy. The court then held that defendant's alleged conduct was sufficiently outrageous to be actionable as intentional infliction of emotional distress.

■ Every violation of District of Columbia public policy does not constitute "extreme and outrageous conduct." *See Karp v. Roach*, 1990 WL 302782 1990 U.S. Dist. LEXIS 17618, at *13–14 (D.D.C. Dec. 24, 1990). The actions that plaintiff alleges in this case are distinguishable from the type of personally offensive conduct before the court in *Best*. Plaintiff's allegations may indicate a violation of public policy with regard to age discrimination, but they do not rise to the level of outrageousness necessary to state a claim for intentional infliction of emotional distress.

### C. Breach of Covenant of Good Faith and Fair Dealing

■ District of Columbia law recognizes an implied covenant of good faith and fair dealing in every contract. *Hais v. Smith*, 547 A.2d 986, 987–88 (D.C.1988). "This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect performance or interfering with the other party's performance." *Id.*

Defendant argues that plaintiff's employment reverted to at-will status following the 180–day period, and therefore that plaintiff cannot assert a claim for breach of an implied covenant of good faith and fair dealing.[3] Defendant overlooks plaintiff's allegations regarding HK's actions during the 180–day period. Plaintiff claims that HK violated the implied covenant of good faith and fair dealing "by failing to provide him with work and work surroundings commensurate with his status," thereby undermining his ability to perform his obligations under the contract. (Complaint ¶ 55.) That allegation suffices to state a claim for breach of an implied covenant of good faith and fair dealing during the guaranteed term of the contract.

### Conclusion

The Court grants defendant's motion to dismiss as to plaintiff's claims for defamation and intentional infliction of emotional distress. Consistent therewith, plaintiff's claims for compensatory and punitive damages for emotional distress, mental anguish, and injury to reputation are dismissed. The Court denies defendant's motion to dismiss as to plaintiff's claim for breach of an implied covenant of good faith and fair dealing.

---

**3.** An implied covenant of good faith and fair dealing does not inhere in an at-will employ-

ment contract.