Wenoka THOMPSON, Plaintiff,

v.

JASAS CORPORATION,
et al., Defendants.

No. CIV.A.98–0124 (RWR).

United States District Court,
District of Columbia.

July 15, 2002.

Elbert Russell Shore, Rockville, MD, for Plaintiff.

Jeffrey Louis Squires, Garvey, Schubert & Barer, Washington, DC, Stephen Cass

Weiland, Patton Boggs, Dallas, TX, John W. Powers, Christopher J. DeGroff, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Lesa L. Carter, Seyfarth Shaw, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Plaintiff Wenoka Thompson filed this lawsuit alleging that she had been discriminated against and harassed by her employer on the basis of her sex, race, and religion. She also asserts causes of action for intentional infliction of emotional distress, defamation, and retaliation. Defendants Jasas Corporation ("Jasas") and Tribune Broadcasting Company ("Tribune") filed a number of dispositive motions directed to various counts in plaintiff's complaint.

Because plaintiff has amply established the court's subject matter jurisdiction over her Title VII claim, dismissal of Count I is inappropriate. Because plaintiff's defamation and intentional infliction of emotional distress claims are either time-barred or inadequate as a matter of law, those two counts will be dismissed. Because plaintiff requested and obtained a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") less than 180 days after filing her EEOC charge of retaliation, plaintiff's retaliation claim must be dismissed without prejudice. Tribune's motion to dismiss for untimely service of process will be denied since the Court will extend the service period retroactively for good cause shown.

## BACKGROUND

Thompson, a black female and a member of the Jehovah's Witness faith, was employed by Jasas beginning in May 1993. In June 1994, she was promoted to the Business Department as an Accounts Payable Technician under the supervision of Donn Fraser. Plaintiff alleges that she was discriminated against in job assignments. Plaintiff also alleges that she was harassed because of her race and her religion, and that Jasas did not address her complaints of harassment by Fraser.

Plaintiff alleges that numerous incidents contributed to a racially hostile work environment. She alleges that Fraser referred to her as "Tar Baby" and "Speck"; that Fraser responded to her request to help plan a company picnic by stating that everyone would be eating barbecue, chitterlings, and watermelon; and that Fraser once carried a "noose" through the office and hung it on his office door, commenting that it was plaintiff's size.

Thompson also alleges that Sandy Shieber, a white female co-worker, harassed her on the basis of her race. Specifically, plaintiff alleges that Shieber accused her of stealing, commenting that "black people do all the stealing." On another occasion, when plaintiff's boyfriend visited the office, Shieber allegedly asked whether the boyfriend was plaintiff's pimp.

Plaintiff was moved from the Business Department to the Engineering Department in December 1995. She alleges that she was subjected to discrimination and harassment in the new department also. Plaintiff claims that she was physically and verbally assaulted and battered by a co-employee on January 7, 1997. She also complains that the alleged attacker, although suspended without pay for one week, was permitted to return to work before the suspension expired.

Thompson filed a charge of discrimination with the EEOC in August 1996. After she received her right to sue letter, she filed this lawsuit *pro se* in the Superior Court of the District of Columbia on December 17, 1997 asserting only a Title VII claim for discrimination and harassment. Jasas removed the action to this court in January 1998.

Thereafter, plaintiff alleges, she was transferred involuntarily from the night shift to the day shift on March 1, 1998, and was discharged on March 12, 1998. She claims that these two events were in retaliation for filing the EEOC charge and this lawsuit. Thompson filed a subsequent EEOC charge of retaliation on May 5, 1998. She quickly requested a right to sue letter and, on June 22, 1998, the EEOC issued one.

Plaintiff, through an attorney, filed an amended complaint in this court, adding causes of action for defamation and intentional infliction of emotional distress. In a second amended complaint, plaintiff added a cause of action for retaliation.

Jasas moved for summary judgment on plaintiff's Title VII claim, arguing only that the Court lacked subject matter jurisdiction because plaintiff failed to cooperate with the EEOC investigation. Jasas and Tribune moved to dismiss the defamation and intentional infliction of emotional distress claims as time-barred and as failing to state a claim. Jasas also moved to dismiss the retaliation claim because plaintiff obtained the right to sue letter prior to the expiration of the statutory 180–day period for the EEOC investigation to be undertaken. Finally, Tribune moved to dismiss plaintiff's complaint, asserting that plaintiff failed to effect proper service upon it within 120 days from the date of removal.[1]

## DISCUSSION

### I. Jurisdiction Over Plaintiff's Title VII Claim

 Before suing under Title VII, an aggrieved party must exhaust her adminis-

trative remedies by filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(e)(1); *Washington v. Washington Metropolitan Area Transit Auth.,* 160 F.3d 750, 752 (D.C.Cir.1998), *cert. denied,* 527 U.S. 1038, 119 S.Ct. 2399, 144 L.Ed.2d 798 (1999). "Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." *Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C.Cir.1995), *cert. denied,* 519 U.S. 811, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996). A "[g]ood faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires." *Crawford v. Babbitt,* 186 F.3d 1322, 1326 (11th Cir.1999); *see also Briley v. Carlin,* 172 F.3d 567, 571 (8th Cir.1999) (plaintiff has exhausted administrative remedies where there has been a "good faith participation in the administrative process, which includes making specific charges and providing information necessary to the investigation"); *MacNab v. Fortis, Inc.,* 2002 WL 534885 *1 (D.Minn. 2002) (citing *Briley* in Title VII case against private employer). Additionally, "[o]nce a complainant files a complaint or appeal and cooperates with the agency or EEOC for 180 days, he is not required to take any further action to exhaust his administrative remedies." *Wilson v. Pena,* 79 F.3d 154, 166 (D.C.Cir.1996) (because the EEOC did not request information from the federal employee during the 180–day period, the plaintiff "cannot be faulted for failing to cooperate"); *see also Charles v. Garrett,* 12 F.3d 870, 875 (9th Cir.1993) (plaintiffs who cooperate for 180 days are entitled to review by federal court).

---

1. Tribune comments throughout its memoranda that it was not plaintiff's employer for purposes of the Title VII claim, but Tribune did not seek dismissal or summary judgment on that basis and did not present evidence to support its position regarding which party was plaintiff's employer.

Jasas has moved for summary judgment arguing that this Court does not have subject matter jurisdiction over plaintiff's Title VII claim because plaintiff failed to cooperate fully with the EEOC investigation.[2] On August 15, 1997, plaintiff told the EEOC investigator that there was a Department of Justice ("DOJ") employee who was a witness to Jasas's alleged surveillance of plaintiff. *See* Jasas's Motion for Summary Judgment on Count I ("Mot. S.J."), Exh. B. The EEOC requested the name and phone number of the DOJ employee and, when plaintiff did not provide that information, the EEOC dismissed plaintiff's charge. The Dismissal and Notice of Rights form sent to plaintiff had an "X" in the box beside the following reason for the dismissal: "Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge." *See* Mot. S.J., Exh. C.[3]

The record in this case establishes that plaintiff made a good faith effort to participate fully in the EEOC investigation for more than one year, repeatedly providing information regarding her charges. In April 1996, plaintiff went to an EEOC office and completed a charge of discrimination form. In June 1996, she completed a charge questionnaire, using approximately seventeen lines to describe the alleged discrimination. In July 1996, plaintiff sent an addendum that was over nine pages in length, single-spaced, and which provided additional detail regarding her allegations and suggested names of witnesses to some of the alleged behavior.[4] In March 1997, plaintiff submitted a ten-page, single-spaced letter describing other incidents of alleged discrimination and harassment. In June 1997, she submitted forty-seven pages of exhibits to supplement the March 1997 letter. In May 1997, plaintiff submitted a counteroffer to a negotiated settlement agreement. She also participated in a joint problem solving/mediation session in July 1997.

Plaintiff's submissions to the EEOC, while rather long and unfocused, made specific assertions and provided the names of potential witnesses that presumably would have assisted the EEOC. Moreover, it is clear that the EEOC was able to conduct an investigation and pursue the conciliation process. The EEOC issued a notice of charge of discrimination and served this notice on Jasas. A negotiated settlement agreement was drafted, a joint problem solving/mediation session occurred, and a final settlement offer from Jasas was submitted to although rejected

---

**2.** Defendant's motion, although characterized by Jasas as one for summary judgment, is effectively a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and will be treated as such. *See Rann v. Chao*, 154 F.Supp.2d 61, 63 n. 1 (D.D.C.2001) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (1990)). "For the purposes of Rule 12(b)(1), it is the plaintiff's burden to establish by a preponderance of the evidence that subject matter jurisdiction exists." *Corel Corp. v. United States*, 165 F.Supp.2d 12, 21 (D.D.C.2001).

**3.** Jasas notes that the EEOC checked a box indicating its decision that plaintiff failed to

cooperate in its investigation and argues that the court is without legal authority to make the contrary finding that plaintiff's cooperation was sufficient to satisfy the exhaustion requirement. *See* Reply to Plaintiff's Opposition to Motion for Summary Judgment, at 6. The case cited by Jasas, *Mills v. Jefferson Bank East*, 559 F.Supp. 34 (D.Colo.1983), does not support Jasas's argument. In the *Mills* case, the court determined that it lacked subject matter jurisdiction because the plaintiff's charge of discrimination was pending before the EEOC for less than 180 days. *Id.* at 35–36.

**4.** The EEOC dates its receipt of the charge of discrimination as August 26, 1996.

by plaintiff. The information not provided by plaintiff was not requested by the EEOC until the charge had been pending for at least a year.

Jasas's argument that plaintiff failed to exhaust her administrative remedies because she did not cooperate in the EEOC investigation is refuted by the record in this case. Plaintiff cooperated fully for significantly more than a year, and her cooperation enabled to EEOC to investigate plaintiff's claims and attempt to resolve the dispute through conciliation. Plaintiff exhausted her administrative remedies and Jasas's motion challenging the court's subject matter jurisdiction as to Count I will be denied.

## II. Defamation and Intentional Infliction of Emotional Distress Claims

Defendants argue that plaintiff's claims for defamation and intentional infliction of emotional distress should be dismissed because they are time-barred and fail as a matter of law to allege sufficient facts to establish the causes of action.

### A. DEFAMATION

■ Under District of Columbia law, a one-year statute of limitations applies to libel and slander claims. See D.C.Code § 12–301(4). Plaintiff's *pro se* complaint identified no dates on which the allegedly defamatory statements were made.[5] Nor did the amended complaint filed by her counsel. Even in the second amended complaint, filed by counsel after Jasas filed its motion challenging the defamation claim as time-barred, plaintiff supplied no dates on which the alleged defamation occurred. In addition, plaintiff did not defend the statute of limitations defect in the defamation claim in either her opposition to Jasas's motion to dismiss or her opposition to Tribune's motion to dismiss these claims.

Notwithstanding having received notice that the statute of limitations was a potentially dispositive issue in the case, plaintiff has failed to specify an actionable time frame for the alleged defamation. Because plaintiff has not alleged conduct which occurred within the one-year statute of limitations prior to filing her original complaint, the defamation claim will be dismissed as time-barred.

### B. EMOTIONAL DISTRESS

#### 1. Statute of Limitations

■ Plaintiff first asserted as a separate court her intentional infliction of emotional distress claim in the amended complaint drafted by counsel and filed on June 18, 1998. Defendants' statute of limitations arguments turn on whether the amended complaint relates back to the date the original *pro se* complaint was filed. "An amendment of a pleading relates back to the date of the original pleading when . . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2); *see also Mittleman v. United States*, 104 F.3d 410, 415 (D.C.Cir.1997).

The factual basis for plaintiff's intentional infliction of emotional distress claim is included in her original complaint. Indeed, plaintiff alleges in the original complaint that she suffered emotional distress as a result of conduct by Jasas. *See* Complaint, ¶ 6. Because the intentional infliction of emotional distress claim "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading," the

---

5. The closest plaintiff comes is when she refers to a time period of "300 days prior to the date she filed her EEOC charge . . . and . . . a period of over a year prior to those 300 days," and alleges defamation "during this period" and "at the time." *See* Complaint ¶ 4.

amended complaint relates back to the December 17, 1997, filing date of the original complaint.

"Because there is no specific statute limiting the time for filing a claim for intentional infliction of emotional distress in the District of Columbia, the D.C. Court of Appeals has held that an independent action for intentional infliction of emotional distress is subject to the District's three-year residual limitation period, D.C.Code § 12–301(8)." *Rendall–Speranza v. Nassim*, 107 F.3d 913, 920 (D.C.Cir.1997). The residuary three-year limitation applies, however, only if the intentional infliction of emotional distress claim is not "intertwined with any of the causes of action for which a period of limitation is specifically provided . . . ." *Id.* (quoting *Saunders v. Nemati*, 580 A.2d 660, 665 (D.C.1990)).

To the extent that plaintiff's emotional distress claim is based on conduct occurring in connection with her employment by Jasas, it is "intertwined with" her hostile work environment claim and thus it assumes the hostile work environment claim's one-year limitation period.[6] *See, e.g. Hunter v. District of Columbia*, 943 F.2d 69, 72 (D.C.Cir.1991) (if complaint does not allege facts showing that defendant intentionally caused emotional distress by conduct independent of an assault and battery, the applicable limitation period is the one-year period provided for assault and battery). Indeed, in her original complaint, plaintiff alleged emotional distress only as an element of her damages resulting from the employment discrimination and harassment.

Plaintiff's emotional distress claim, therefore, is restricted to incidents that occurred within the year preceding the filing of her original complaint on December 17, 1997. The alleged incidents by defendants within the limitations period include the decision to allow plaintiff's attacker to return to work before the expiration of his suspension, plaintiff's transfer to the day shift, and her termination.[7]

### 2. Sufficiency of Claim

"To recover on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate 'extreme and outrageous conduct which intentionally or recklessly cause[d] severe emotional distress.'" *Rogala v. District of Columbia*, 161 F.3d 44, 57–58 (D.C.Cir.1998) (quoting Restatement (Second) of Torts § 46 (1965)). "Liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

---

6. In the District of Columbia, a hostile work environment claim is subject to a one-year statute of limitations. *See* D.C.Code § 1–2556(a).

7. Plaintiff alleges that she was assaulted and battered by a co-employee on January 7, 1997, within the one-year statute of limitations. "Under the District of Columbia law of respondeat superior, an employer may be held vicariously liable for the intentional torts of his employee only where the employee's tortious act grew out [of] a foreseeable job-related controversy and was motivated at least in part by a purpose to serve his principal." *Johnson v. United States*, Civil Action No. 87–0300, 1987 WL 15690 *1 (D.D.C. July 31, 1987) (citing *International Distributing Corp. v. American District Telegraph Co.*, 569 F.2d 136 (D.C.Cir.1977); *Lyon v. Carey*, 533 F.2d 649 (D.C.Cir.1976)). In this case, plaintiff neither asserts respondeat superior as a basis for imposing liability on defendants based on the assault and battery allegedly committed by a co-worker nor alleges facts which would support the imposition of respondeat superior liability. As a result, the alleged assault and battery cannot be considered conduct committed by defendants. *See id.* (dismissing claim against tortfeasor's employer for failure to allege facts to support respondeat superior liability).

in a civilized community." *Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) (internal quotations omitted).

■ "[I]n an employment context, the proof required to support a claim for intentional infliction of emotional distress is particularly demanding." *Lockamy v. Truesdale,* 182 F.Supp.2d 26, 38 (D.D.C. 2001). For example, in *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624 (D.C.1997), the plaintiff claimed that his employer had "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position." *Id.* at 628. The court held that the described conduct was "of the type attributable to 'employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct.'" *Id.* (quoting *Howard University v. Best,* 484 A.2d 958, 986 (D.C.1984)).

■ In this case, plaintiff's intentional infliction of emotional distress claim is limited to those alleged events after December 17, 1996. These events are the early return to work of plaintiff's alleged attacker, plaintiff's transfer to the day shift, and her termination. This alleged conduct is significantly less outrageous than the conduct found inadequate as a matter of law in *Kerrigan.* Plaintiff's allegations which are not time-barred fail as a matter of law to support her intentional infliction of emotional distress claim. Defendants are entitled to summary judgment on this claim.

### III. *Retaliation Claim*

■ Jasas has moved to dismiss Thompson's retaliation claim. It argues that her failure to wait 180 days after filing the claim with the EEOC before bringing the claim in this court deprives the court of jurisdiction over the claim.

■ Under Title VII, a right to sue letter is not to be issued sooner than 180 days after the EEOC charge is filed. *See* 42 U.S.C. § 2000e–5(f)(1). At the time plaintiff filed her retaliation charge with the EEOC, an EEOC regulation permitted the early issuance of the right to sue letter if the EEOC "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge." 29 C.F.R. § 1601.28(a)(2). The United States Court of Appeals for the District of Columbia Circuit, however, subsequently held that the EEOC regulation permitting an early right to sue letter violates § 2000e–5(f)(1). *Martini v. Federal National Mortgage Ass'n,* 178 F.3d 1336, 1346–47 (D.C.Cir. 1999), *cert. dismissed,* 528 U.S. 1147, 120 S.Ct. 1155, 145 L.Ed.2d 1065 (2000). The court held unequivocally that "Title VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court." *Id.* at 1347.

Because the EEOC stopped processing plaintiff's charge after it had been pending for only 48 days, Count IV must be dismissed without prejudice.

### IV. *Tribune's Motion to Dismiss Based on Insufficient Service*

■ Although Tribune concedes that it has now been properly served with a summons and a copy of plaintiff's amended complaint, Tribune asks the court to dismiss plaintiff's case against it because plaintiff failed to obtain proper service within 120 days from the time of removal as required by Rule 4(m) of the Federal Rules of Civil Procedure.

Plaintiff attempted to serve Tribune by certified mail in April 1998. Tribune's representative signed for delivery on April

10, 1998, less than 120 days after removal. Plaintiff has submitted an affidavit that the package signed for by Tribune on April 10, 1998, included a summons and a copy of the original complaint filed in Superior Court. Tribune asserts that the package contained only the complaint, not a summons. Tribune also argues that, since the case had already been removed to federal court, service of the Superior Court summons and complaint did not satisfy the requirements of Rule 4 of the Federal Rules of Civil Procedure.

Tribune does not cite legal authority from this circuit in support of its argument that service in a removed case of the Superior Court summons and complaint is ineffective service under Rule 4, and this Court's research has revealed none. Indeed, the only case cited by Tribune is a District of Colorado case, *Bruley v. Lincoln Property Co.*, 140 F.R.D. 452, 454 (D.Colo.1991). The *Bruley* holding on this issue has not been adopted in a published decision by any other court.

The Court need not decide this issue. Rule 4(m) does not require dismissal where service is not accomplished within 120 days. Instead, Rule 4(m) provides that the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." Fed.R.Civ.P. 4(m). The rule also provides that, upon a showing of good cause, "the court shall extend the time for service for an appropriate period." *Id.* Good faith efforts by plaintiff, *pro se*, to obtain proper service on Tribune constitute good cause for an extension of time under Rule 4(m). *See, e.g., Moore v. Agency for International Development*, 994 F.2d 874, 877 (D.C.Cir.1993) (two attempts by *pro se* plaintiff to serve defendant and defendant's delay in answering was good cause for giving plaintiff an extended period of time to perfect service of process). Additionally, if the Court were

to conclude that service were improper, the Court would have the option to direct that proper service be accomplished within a specified time.

The Court extends the time for service until July 27, 1998, the date Tribune concedes it was properly served with a summons and copy of plaintiff's amended complaint. Tribune's motion to dismiss the complaint for insufficient service will be denied.

### CONCLUSION AND ORDER

Plaintiff cooperated fully with the EEOC for well over a year and her failure to provide the EEOC with the name of the alleged DOJ witness does not deprive this Court of jurisdiction over plaintiff's Title VII claim. Jasas's motion challenging subject matter jurisdiction as Count I of the complaint will be denied.

Plaintiff's defamation claim is time-barred, as is the intentional infliction of emotional distress claim to the extent it is based on conduct occurring prior to December 17, 1996. The conduct by defendants alleged to have occurred after this date is not sufficiently extreme and outrageous to establish a claim for intentional infliction of emotional distress. Counts II and III will be dismissed.

Plaintiff's retaliation claim must be dismissed without prejudice because plaintiff filed it prematurely.

The Court, finding good cause, extends *nunc pro tunc* the deadline for plaintiff to serve Tribune to July 27, 1998. Since plaintiff obtained proper service upon Tribune on that date, Tribune's motion to dismiss will be denied.

Accordingly, it is hereby

ORDERED that Jasas's Motion as to Count I[23] be, and hereby is, **DENIED**; Jasas's Motion to Dismiss Counts II and III[24] be, and hereby is, **GRANTED**; Ja-

sas's Motion to Dismiss Count IV[46] be, and hereby is, **GRANTED**; and Tribune's Motion to Dismiss [45] be, and hereby is, **DENIED**.