*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-AA-97

ASHLEY YOUNG, PETITIONER,

V.

D.C. DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT.

Petition for Review from the District of Columbia
Office of Administrative Hearings
(DOES-5521-20)

(Hon. Arabella Teal, Administrative Law Judge)

(Argued October 14, 2021                           Decided February 3, 2022)

*Jonathan H. Levy*, with whom *Nicole Dooley* and *Mariah Hines* were on the brief, for petitioner.

*Ashwin P. Phatak*, Deputy Solicitor General, with whom *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, were on the brief, for respondent.

Before BECKWITH and MCLEESE, *Associate Judges*, and FISHER, *Senior Judge*.

BECKWITH, *Associate Judge*:    Petitioner Ashley Young challenges the

decision of an administrative law judge (ALJ) who concluded that Ms. Young's

failure to complete a quality control audit of the processing of her unemployment benefits claim made her ineligible for back benefits. For the reasons set forth in this opinion, we reverse and remand with instructions to award Ms. Young benefits for the contested weeks.

## I.

The following facts appear to be undisputed. Ms. Young applied for unemployment benefits on November 5, 2019, after her employer, a food services company, fired her. Later that month, a Department of Employment Services (DOES) claims examiner determined that Ms. Young had been discharged for misconduct and disqualified her from receiving benefits. Ms. Young's denied claim was then randomly selected for participation in a quality control audit known as the Benefits Accuracy Measurement (BAM), and on November 26, 2019, a DOES investigator named Darian Cole mailed her a letter and a copy of the BAM form she was to complete.

Mr. Cole's letter stated that Ms. Young's "denial determination [wa]s one of a small number picked at random to assess program quality" through a BAM audit that would examine "the correctness of the decision to deny [Ms. Young] benefits." If the BAM detected an error, Mr. Cole wrote, DOES "may not be able to correct it . . . due to finality regulations." Mr. Cole therefore cautioned that Ms. Young

"must not rely on this review to result in corrective action." In addition to a copy of the BAM, Mr. Cole included a fact sheet that instructed claimants whose applications for benefits were denied "to pursue their appeal rights without regard to this [BAM investigation]." That fact sheet further warned that if a BAM "response is received after an interruption of unemployment benefits, reinstatement of benefits occurs as of that date and payments are not retroactive." Mr. Cole's letter instructed Ms. Young to return the BAM form within seven days.

Several weeks after mailing the letter, Mr. Cole followed up by emailing Ms. Young on three occasions asking her to complete the BAM. Each email included a copy of the BAM, a new due date, and a notice that "[f]ailure to report, disclose, and/or provide information when directed or to complete the questionnaire by the due date may result in a delay or denial of benefits." But Ms. Young, who was having issues with the U.S. Mail—including a time in which she was not receiving any mail at all—and who had not been checking her junk email folder during this time, did not receive DOES's communications about the BAM. In fact, she did not learn of the request to fill out the BAM until July 2020, when she called DOES for an update on her claim and was directed to Mr. Cole. Once Ms. Young reached Mr. Cole, she completed the BAM questionnaire while she was on the phone with him.

What Ms. Young did not learn during her phone call with Mr. Cole, however,

was that when she had not returned the BAM form to DOES back in January, Mr. Cole had issued a determination that she had failed to report as directed, meaning that she could remain ineligible for benefits "until such time as contact is made with [the DOES] office." When Ms. Young learned this in October 2020, she filed an appeal with the Office of Administrative Hearings (OAH). At a hearing, the ALJ took testimony from Mr. Cole regarding his various mailings and the failure-to-report determination that rendered Ms. Young ineligible for benefits.[1] In her own testimony, Ms. Young explained that the mail delivery to her apartment was unreliable and noted that she had eventually discovered an email from Mr. Cole in her junk email folder.

After determining that she would not fault Ms. Young for filing her appeal outside the fifteen days claimants have to challenge an examiner's determination,[2] the ALJ considered whether good cause excused Ms. Young's failure to report.

---

[1] Though Ms. Young's former employer initially disputed her eligibility for unemployment compensation, by the time of the hearing it no longer contested her claim.

[2] The ALJ concluded that Ms. Young "proved that the delay in filing the appeal was due to a combination of good cause (she did not know of the DOES failure to report decision until July 2020) and excusable neglect (she did not obtain a copy of the Determination until October 16, 2020)."

Citing D.C. Code § 51-109(1) (2020 Repl.)[3] and 7 D.C.M.R. § 304.4(g) (2022),[4] the ALJ noted that the Unemployment Compensation Act "prevents a claimant from receiving benefits if she fails to respond to a DOES request for any information needed about her claim" and that a claim for benefits must have been made "in accordance with such regulations as . . . [DOES] may prescribe." Though she acknowledged the lack of a "specific standard for assessing failures to report information of the kind DOES sought in this case," the ALJ ultimately determined that Ms. Young did not have good cause for her initial failure to report as directed. Ms. Young was, however, eligible for benefits beginning July 19—the beginning of the week during which she completed the BAM survey.[5]

## II.

On petition for review, Ms. Young argues that in these circumstances, the ALJ

---

[3] "An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found by the Director: (1) That he has made a claim for benefits with respect to such week . . . ."

[4] "Claimants shall state the following with respect to their initial claims: (g) Any other information as the Director determines is reasonably necessary to establish the individual's eligibility for benefits, including the reason for separation given the claimant by his or her last employer."

[5] DOES considers eligibility on a weekly basis. So although Ms. Young completed the BAM on July 23, a Thursday, DOES lifted her disqualification as of the prior Sunday, and the ALJ followed suit.

had no authority to determine that Ms. Young was ineligible for back benefits and that the ALJ's decision contravened both the humanitarian purpose of the Unemployment Compensation Act and due process.[6] She therefore asks us to reverse the ALJ's decision and direct the agency to grant the benefits at issue.[7] DOES counters that the pertinent regulations allow DOES to condition benefits upon completion of the BAM.

We affirm an OAH decision when "(1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and

---

[6] DOES argues that we should not consider any of the arguments Ms. Young presents in her petition on review because she did not make these arguments to the ALJ. As an initial matter, "a reviewing court has discretionary authority to consider issues which have not been raised before the agency" in the event of "exceptional circumstances." *Goodman v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 1293, 1301 n.21 (D.C. 1990). We need not decide if such "exceptional circumstances" are present here, however. *See id.* Even if Ms. Young's claim that she was eligible for the disputed benefits did not include the argument we address on appeal, the ALJ determined that DOES had the statutory and regulatory authority to deny back benefits in this case, and DOES has not identified any significant prejudice stemming from our consideration of this claim. *See District of Columbia v. District of Columbia Cont. Appeals Bd.*, 145 A.3d 523, 530 n.9 (D.C. 2016) (finding no waiver where the agency passed upon the issues and where the court saw no prejudice in reviewing them); *Black v. District of Columbia Dep't of Human Servs.*, 188 A.3d 840, 848 (D.C. 2018) (noting that even an unargued claim may be considered as long as it was "passed upon" and that parties on appeal are not limited to the exact arguments made before the agency).

[7] Beyond Ms. Young's request that the case be remanded with instructions to award her benefits, neither party has asked the court to remand the case for further proceedings.

(3) OAH's conclusions flow rationally from its findings of fact." *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 180 (D.C. 2006). Factual findings are supported by "substantial evidence" when there is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 181 (quoting *Gardner v. District of Columbia Dep't of Emp. Servs.*, 736 A.2d 1012, 1015 (D.C. 1999)). We uphold OAH's legal conclusions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C. Code § 2-510(a)(3)(A) (2021 Repl.). "[W]e are not obliged to stand aside and affirm an administrative determination which reflects a misconception . . . or a faulty application of the law." *Thomas v. District of Columbia Dep't of Lab.*, 409 A.2d 164, 169 (D.C. 1979).

In the view of DOES, 7 D.C.M.R. § 304.4(g) and 7 D.C.M.R. § 316 gave DOES the authority to deny Ms. Young benefits for the period in which she failed to complete the BAM. More specifically, DOES argues that the BAM form was "reasonably necessary to establish" Ms. Young's eligibility for benefits under § 304.4(g), that it also fell within the reporting requirements of § 316,[8] and that as a

---

[8] This regulation states, in relevant part, that "[e]ach claimant shall register and inquire for work as specifically instructed by the Director," 7 D.C.M.R. § 316.2, and that "[a] claimant who fails to register and inquire for work as instructed by the Director may be held ineligible for each week in which the registration requirement is not met." 7 D.C.M.R. § 316.5. According to DOES, a claimant's ongoing

result, Ms. Young's failure to submit the form could properly result in the loss of benefits for which she was otherwise eligible.[9]

At the outset, the record in this case supplies some reasons to doubt the notion that the BAM is a mechanism for determining initial and ongoing eligibility for unemployment compensation. Ms. Young had already been deemed ineligible to receive unemployment compensation when a BAM investigator, not a claims examiner, sent her the BAM. The BAM's purpose, according to materials DOES sent to Ms. Young, was to "test the validity of Unemployment Insurance benefits payments and denials" and "assess the accuracy of monetary determinations and the proper detection and resolution of eligibility issues" throughout the program. Although counsel for DOES represented at oral argument that the government had a policy of correcting errors discovered through BAM results, DOES's letter to Ms. Young stated that the agency "may not be able to correct [mistakes] . . . due to finality regulations" and that claimants "must not rely on this review to result in corrective action." DOES also instructed Ms. Young to file a formal appeal "without

---

obligation to report about job applications and so forth extends, as well, to the BAM.

[9] DOES contends that Ms. Young forfeited any due process challenge to DOES's statutory scheme because she did not raise it before the ALJ. Because we decide this petition on other grounds, we need not decide whether the due process challenge is properly before us.

regard to this audit."

These discrepancies suggest that the BAM is not consistently understood as a procedure for determining eligibility—and indeed, the regulations governing eligibility for benefits do not mention the BAM, let alone specify a deadline for completing the BAM or the consequence of failing to do so. A quality control survey like the BAM is far from the paradigm of an undertaking that is "reasonably necessary to establish a claimant's eligibility for benefits," 7 D.C.M.R. § 304.4(g). It is likewise less than clear how a claimant's obligation to "register and inquire for work" under 7 D.C.M.R. § 316.2 is served by submission of a BAM form.

But we need not decide whether the regulations authorize the DOES to deny benefits based on a claimant's failure to participate in a quality control audit. Even assuming DOES's interpretation of the regulations can stand as a matter of law, the ALJ did not make the case for applying them in these circumstances. The ALJ did not explain how the deadlines DOES imposed in this case constituted "reasonable claim information filing requirements" or how the information requested by the BAM was "necessary." Even if the judge had elaborated upon the basis for her ruling, the record was devoid of evidence justifying the particular deadlines or establishing the BAM's necessity to the eligibility determination in this case. The documents DOES presented at the hearing introduced an ambiguity that the ALJ

never grappled with. In the BAM fact sheet, DOES warned that if benefits were interrupted—which Ms. Young's were not—"*reinstatement* of benefits occurs as of [the BAM response] date and payments are not retroactive." (emphasis added). The BAM itself says that failing to complete the BAM "by the due date *may* result in a delay or denial of benefits." (emphasis added). The ALJ did not resolve this inconsistency or explain why Ms. Young's failure to complete the BAM by one of a series of deadlines set by a BAM investigator necessarily divested her of benefits.

The District's Unemployment Compensation Act "is remedial humanitarian legislation of vast import" that "must be broadly and liberally construed . . . for the benefit of unemployed workers." *Cruz v. District of Columbia Dep't of Emp. Servs.*, 633 A.2d 66, 69 (D.C. 1993) (quoting *Pittsburg Pipe & Coupling Co. v. Unemp. Comp. Bd. of Rev.*, 165 A.2d 374, 377–78 (Pa. 1960)). On the record before us, we cannot say that the ALJ gave "full and reasoned consideration" to why Ms. Young's failure to complete the BAM should deprive her of back benefits. *See Hamilton v. Hojeij Branded Food, Inc.*, 41 A.3d 464, 477 (D.C. 2012) (quoting *Dietrich v. District of Columbia Bd. of Zoning Adjustment*, 293 A.2d 470, 473 (D.C. 1972)); *see also U.N. v. District of Columbia Dep't of Emp. Servs.*, 2009 WL 4234139 (D.C. Off. of Admin. Hearings July 28, 2009) (reversing an ineligibility determination where DOES provided inconsistent information about the effect of failing to file a weekly claim because of the remedial purpose of the Unemployment Compensation

Act); *cf. Ridge v. Police and Firefighters Ret. & Relief Bd.*, 511 A.2d 418 (D.C. 1986) (holding that, in the absence of explicit statutory guidance, the Police and Firefighters Retirement and Disability Act did not support denying an otherwise eligible claimant back benefits). Particularly given the lack of clarity in this record and the dearth of relevant evidence, the ALJ was obligated to "broadly and liberally construe[]" the Unemployment Compensation Act in favor of Ms. Young. *Cruz*, 633 A.2d at 69.

In sum, the ALJ's denial of unemployment benefits for which Ms. Young was otherwise eligible was arbitrary and did not flow rationally from the facts.[10] *See, e.g.*, *Hamilton*, 41 A.3d at 478 (reversing an ALJ's denial of benefits based on gross misconduct where that conclusion was "unwarranted" in light of "the state of the record" and "the humanitarian purposes of the unemployment compensation statute"). We therefore reverse the ALJ's order and remand with instructions to award Ms. Young benefits for the contested weeks.

*So ordered.*

---

[10] That the ALJ treated Ms. Young's completion of the BAM as triggering her eligibility indicated that Ms. Young otherwise was eligible to receive benefits.